IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JAY H. HEAD,
#148875                                                                                          PLAINTIFF

V.                              CASE NO. 4:19-CV-603-BD

TURN KEY HEALTH PROVIDER, *et al*.                                         DEFENDANTS

## ORDER

Plaintiff Jay Head, a pretrial detainee in the Pulaski County Detention Facility (Detention Facility), filed this civil rights lawsuit without the help of a lawyer. (Doc. No. 2) Mr. Head claims that Defendants Absalom Tilley and Marcia Wilson were deliberately indifferent to his serious medical needs.[1]  (Doc. Nos. 2, 5-1)

Defendants Tilley and Wilson have moved for summary judgment on the merits of Mr. Head's claims. (Doc. No. 31) In response to Defendants' motion, Mr. Head filed two letters from a state court judge dated November 9, 2015, and January 14, 2016, instructing Detention Facility staff to provide Mr. Head with his seizure medication. (Doc. No. 39) Mr. Head does not dispute any other facts that the Defendants set out in their statement of undisputed facts. Accordingly, the Court will assume that the Defendants' statement of undisputed facts is accurate. The Court will further assume that a state court judge ordered Detention Facility staff to provide Mr. Head with seizure medication in 2015 and 2016. See Local District Court Rule 56.1

---

[1] The Court has already dismissed all other claims and Defendants. (Doc. Nos. 6, 8)

## I. Standard

Summary judgment means that the court rules in favor of a party without the need for a trial. Here, the Defendants are entitled to summary judgment if—but only if—the evidence in the record shows that there is no genuine dispute about any fact important to the outcome of the case. If there are genuinely disputed facts that are important enough to matter, the Court views those facts in a light most favorable to Mr. Head, unless the record so clearly contradicts his version of a events that no reasonable juror would believe it. *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007). FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

## II.     Factual Background

In his complaint, Mr. Head alleges that a state court judge ordered Defendants to provide him with four medications for his seizures, headaches, and trouble sleeping, but that Defendants only provided him with one medication from August 7, 2019 to September 24, 2019. (Doc. Nos. 1, 5-1, 34) In support of his response to the Defendants' motion, Mr. Head filed two "speed letters" signed by Pulaski Circuit Court Judge Wendell Griffin ordering Detention Facility staff to provide Mr. Head seizure medication in November of 2 015 and January of 2016. (Doc. No. 39, pp.4-5) In this lawsuit, Mr. Head alleges that Defendants' failure to provide his prescribed medications caused him to suffer seizures, headaches, and difficulty walking. (Doc. No. 1)

When Mr. Head was booked into the Detention Facility on August 7, 2019, Detention Facility staff asked him to list all current medications and his pharmacy. (Doc. No. 32, p. 53) Mr. Head listed phenytoin, an anti-seizure drug; lorazapem, a drug used to treat anxiety; and phenobarbital, a drug used to control seizures and anxiety. (Doc. No. 32, p. 53) He listed his pharmacy as Kroger on Camp Robinson Road. (Doc. No. 32, p. 53)

The medical staff called the Kroger pharmacy to confirm Mr. Head's prescription medications. The pharmacist responded that Mr. Head had not had prescriptions filled at that pharmacy since September 24, 2017. (Doc. No. 32, pp. 58-59) According to Defendants, they did not order prescriptions for Mr. Head because they were unable to obtain his medical records or confirm his prescriptions at the pharmacy. (Doc. No. 34)

On August 16, 2019, a deputy on duty discovered Mr. Head shaking in his cell and took him to the medical unit. (Doc. No. 32-1, p.88) At the medical unit, Mr. Head reported having had a seizure. (Doc. No. 32-1, p.88) On August 20, 2019, Defendant Tilley examined Mr. Head and prescribed 100mg of phenytoin to be taken twice a day for epilepsy. (Doc. No. 32, p. 6)

On September 14, 2019, Mr. Head requested mental health treatment. (Doc. No. 32, p. 24) Two days later, on September 16, 2019, he saw a mental health professional and reported experiencing severe anxiety and trouble sleeping. (Doc. No. 32, pp. 24, 91) On September 27, 2019, Mr. Head was examined by a psychiatrist who prescribed

3

buspirone to alleviate anxiety. (Doc. No. 32, p.94) Since receiving phenytoin and buspirone, Mr. Head has not complained of symptoms of epilepsy or mental health issues. (Doc. Nos. 32, 32-1)

### III. Discussion

To succeed on his claim that Defendant failed to provide him with constitutionally adequate medical care, Mr. Head would have to show that he suffered from an objectively serious medical need and that the Defendants knowingly failed to provide needed care. *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Negligence—even gross negligence—cannot support a claim of deliberate indifference. Likewise, disagreement with treatment decisions is not grounds for holding a defendant liable. *Langford,* 614 F.3d at 460; *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

On August 27, 2019, Mr. Head filed his complaint, alleging that the Defendants failed to provide him with three of his four medications. Mr. Head has offered no proof, however, that he had any current prescriptions when he arrived at the Detention Facility on August 7, 2019. It is undisputed that the pharmacy Mr. Head identified as his pharmacy had not filled prescriptions for him since 2017. Detention Facility staff were not required to give Mr. Head prescription medications without documentation based solely on Mr. Head's assertions.

Mr. Head relies on state court orders requiring Detention Facility staff to provide Mr. Head with seizure medications, but Judge Griffin issued those orders in 2016; that is three years prior to Mr. Head's 2019 detention.

When staff found Mr. Head in distress on August 16, 2019, nine days after his intake assessment, they took him to the medical unit. Four days later, Defendant Tilley prescribed an anti-seizure medication. Seven days later, Mr. Head filed this complaint, alleging he had received only one of his four prescription medications. There is no evidence to indicate that Mr. Head had any active prescriptions when he arrived at the Detention Facility. Likewise, there is no evidence to indicate that any of the Defendants deliberately failed to provide Mr. Head with prescribed medications at any time relevant to the claims in this lawsuit.

When staff observed Mr. Head having a seizure in his cell, they immediately took him to the medical unit; a doctor evaluated Mr. Head four days later and prescribed seizure medication. Furthermore, when Mr. Head complained of mental health needs, a mental health professional evaluated him within two days. Eleven days later, a psychiatrist examined him and prescribed anxiety medication.

## IV.    Conclusion

The Defendants' motion for summary judgment (Doc. No. 31) is GRANTED. Mr. Head's claims are DISMISSED, with prejudice. The Clerk of the Court is instructed to close this case.

IT IS SO ORDERED, this 19th day of January, 2021.

_____
UNITED STATES MAGISTRATE JUDGE